SAMUEL PALFUS, plaintiff in error, *vs.* THE STATE, defendant in error.

1. Where there is no evidence to sustain a verdict, the same will be set aside.
2. To constitute a house a disorderly house in law, the noises, &c., must be *ordinary and usual, or common*, and the disturbance must be *general*, and not of only *one* person in a thickly settled neighborhood.
3. When the jury mistake the *character* of the case or of the evidence, and the *amount and kind* of testimony, it is good ground for a new trial.

*Certiorari* from County-Court. Decided by Judge VASON, Dougherty Superior Court, January Adjourned Term, 1867.

In the County-Court of said county, in July, 1866, Palfus was tried on an indictment for keeping and maintaining a common ill-governed and disorderly house.

The testimony introduced was as follows:

JAMES H. HILL testified that about four weeks before, at 11 or 12 o'clock at night, there was loud noise upon the steps and in the house of defendant; he went there to stop it; negroes were cursing upon the steps; witness saw two negroes with their heads poked out of the second door (from the street) of defendant's house; witness had frequently heard loud cursing and swearing up stairs in defendant's *rooms;* witness lives on the lot adjoining the one on which defendant's house is situated, about forty or fifty feet from the door of the lower room of defendant's house; witness' house is on the south side of defendant's, on Washington Street; the stairs are on the north side of defendant's house, between it and the brick building occupied by Fields & Jelks; the doors of the rooms of defendant up-stairs, lead out upon a platform on the north side, at the head of the stairs; the stairs go entirely over into the back yard of defendant's premises.

Henry Morgan, Esq., has occupied the front room up-stairs as an office, and slept there. Witness has been disturbed by noise in said house a number of times before the time spoken of, and he had complained to said Morgan about

it, who he thought could stop it; on the night spoken of, witness went there twice to stop the noise.

R. H. ALLEY testified that he had slept in his grocery, next door north of Fields & Jelks' store; had never heard any noise at defendant's house, except a little running over the stairs, but the noise never disturbed him.

———————— testified that he occupied the brick store immediately north of defendant's house; was only there in the day time, but never heard any noise there.

THOMAS JOINER testified that he sleeps up-stairs in the brick building occupied by Fields & Jelks; that he had never heard any noise at defendant's house, except at the time first spoken of by Hill (*ante*); then he heard some noise, and negroes running over the stairs; witness had just moved into the house, two or three days before.

G. W. TERRY testified that two or three months before the trial, he heard fiddling and dancing in defendant's house; about that time he frequently heard fiddling there, and several times loud talking and cursing; witness boards at Mr. Hill's, and was on his front piazza when he heard these noises; he asked Hill why he did not stop it; some ladies were with witness in the piazza, and the noises and cursing disturbed him and the ladies.

Here the State closed. Defendant introduced the following testimony.

J. E. ROMNEY testified that he lives in the Shackleford lot, adjoining defendant's lot; witness is a tailor, and works for defendant, who is also a tailor, and witness is at defendant's house constantly every day.

Defendant's negro family was an old woman and her three daughters, she and one daughter being seamstresses, who sew for defendant. There never was any noise at defendant's while the witness was about. Witness is a little deaf, but has never heard his family complain. There was a good deal of running over the steps from the back yard both night and day.

F. POLACHEK testified that he had been engaged as clerk in the store immediately under the rooms occupied by de-

fendant up-stairs, and sleeps in the store every night.   He never knew any distnrbance there.

WILEY BRASWELL testified that he clerked for defendant from 1st January till the latter part of March, and sometimes played the fiddle up-stairs, and sometimes down in the storeroom, but there was no other noise or disturbance there while he stayed there.

D. NEWMAN testified that he clerked in the store immediately under defendant's rooms from the middle of April up to the trial, and stayed there night and day.   Michael Sullivan, who lived with defendant, came there one night drunk, and made considerble fuss, but with that exception there had been no noise there to disturb any one.

WM. RICH testified that he had stayed in the store immediately under defendant's room daily, and slept there at night constantly from the 1st February until the 24th April, and during that time there was no noise there to disturb any one; there was considerable passing over the steps to the back yard, and once at a wedding they had fiddling and dancing, as was usual on such occasions.

HENRY MORGAN testified that he had for several years occupied the front room up-stairs of defendant's house as an office and sleeping room, and was separated from the room occupied by defendant's negroes by a thin partition only; the room in the west end is defendant's kitchen, and the negroes usually stay in the room next to witness' office.

Witness was confined to his room by sickness from about the first of January till about the first of May, and was sometimes extremely nervous, and noise would have disturbed him certainly ; he was not disturbed ; there was a wedding there one night, and fiddling and dancing as usual on such occasions ; there was frequent passing over the stair-steps into the back yard, and this had disturbed him when he was sick, there being only a wall between his room and this stairway ; It is under witness' control ; defendant only has a right to pass over it to get to his rooms in the rear ; witness had not slept in his office since 2d May last.

During the trial, defendant sought to prove that the house

of Hill, the witness, was a disorderly one, but the Court refused to allow it.  The Judge was requested to charge the jury that " in order to convict in this case, the person charged must keep and maintain a common disorderly and ill-governed house ; that ' keep and maintain ' means he was in the habit of doing it daily, weekly, and monthly ; that it must' be a common thing, and to the common disturbance of the neighborhood ; that is, that it disturbed everybody ;" and that unless every allegation in the bill was sustained by evidence, the jury must acquit.

The Court did not charge as requested, but charged the jury that if they believed the house had been kept in a disorderly manner, they must find the defendant guilty ; giving no explanation of what "disorderly" in the statute meant.

The jury found the defendant guilty, and the sentence was, that defendant pay a fine of one hundred dollars and the costs ; or, in default of payment, be imprisoned for six months in jail.

Defendant sued out *certiorari* on the points indicated heretofore, and upon the ground that the verdict was contrary to law, the charge of the Court, and the evidence.

Upon the hearing, Judge VASON refused a new trial, and this refusal is assigned as error.

H. MORGAN, for plaintiff in error.

D. H. POPE, Solicitor General, for the State.

HARRIS, J.

1. A new trial should have been awarded by the Superior Court.  Carefully analysing the testimony to ascertain its probative force, we think that it is very far from establishing the fact alleged, that defendant " did keep and maintain a *common* ill-governed and disorderly house, to the encouragement of idleness, gaming, drinking, or other misbehavior, or to the *common* disturbance of the neighborhood or orderly citizens."  There is not a particle of testimony which classes the house of defendant as an inn, a gaming house, or drink-

Palfus *vs.* The State.

ing saloon, or ten-pin alley, or as a house or place where the idle or dissipated, or riotous and lawless collect or frequent; nor does it appear to be a place or house kept for any purpose injurious to health or morals. A part of the house was occupied by defendant with his tailoring business (he being a tailor by occupation), a room or two by negro women, some of whom were employed by him as seamstresses, another room up-stairs was occupied as a law office and sleeping room by Henry Morgan, Esq., and underneath the rooms of defendant was a store room where business was regularly transacted. These facts considered make the charge of keeping a common ill-governed and disorderly house difficult to prove. It certainly in this case could be maintained only by clear proof of the cursing and swearing, and loud and frequent noise, to have been in the rooms of defendant under his control; and then that they were *common* and usual, and were to the *common* or general disturbance of the neighborhood or orderly citizens.

Does the testimony establish either the one or the other? Can the cursing and swearing and noise on two, three, or four occasions complete and fill the idea of the law as expressed by the word *common*? What noises are proven specifically but the fiddling of a clerk several times in the rooms of defendant, and that of negroes going over the stairway, which was under the control of Mr. Morgan, not of defendant? And this is the substance of the testimony upon which defendant was convicted.

2. We apprehend that the Legislature in enacting this clause of the Code for the preservation of order and tranquility, designed to act upon criminally—only such houses wherein loud noises, cursing, swearing, &c., were *ordinary* and *usual*, or *common* occurrences; not casual and at long intervals, but were the general, customary, common habits (if we use such an expression for illustration) of the house. These characteristics seem to us essential to fix upon a disorderly house the name of *common*.

So, too, the noise or disorder must not disturb *one* person only in a thick or populous neighborhood; it must disturb it

*generally,* or it cannot be said of it to have been to the *common* disturbance of the neighborhood or orderly citizens. The testimony here shows but *one* person living in the immediate neighborhood to have been disturbed, whilst several witnesses occupying the same house with defendant, and others an adjacent house, being there the whole time deny that there was at any time in defendant's house such noise and disorder as was charged.

3. The finding of the jury in the County-Court, we presume, must have been the result of a misconception of the *kind* of house the Legislature meant to regulate, as also of the *amount* and *kind* of testimony necessary to constitute the offence.   It may be that the jury did not give due weight to the testimony on the part of defendant, from the impression, probably, that it was altogether negative in its character.   It appears to us to be distinctly affirmative of the facts testified to, of the rooms of defendant being quiet and orderly during the time spoken of, and thus becomes important proof to rebut the idea of usual, general, common disorder in them.

Let the judgment be reversed.