A90A1716. TATE v. THE STATE.
(401 SE2d 549)

SOGNIER, Chief Judge.

Allen Eldridge Tate, Jr. appeals from his conviction of aggravated assault on a police officer, two counts of providing alcohol to minors, and maintaining a disorderly house.

Construed to support the jury's verdict, the pertinent evidence adduced at trial showed that on May 14, 1988, off-duty Calhoun Police Officer Jerry Sapp was working as a security guard for a hamburger restaurant and was in the restaurant's parking lot when he noticed a car being driven recklessly. The car was spinning around doing "donuts," squealing its tires and almost turning over. Sapp waved his hands and a flashlight, hoping to stop the car, but the vehicle accelerated and headed straight toward Sapp, who was forced to jump out of the way to avoid being hit.

Jimmy Harris, who was 17 at the time of the incident, testified that he was a passenger in the car which almost ran down Sapp, and that appellant was the driver. Two 14-year-old girls, Harris' sister and a friend, were also in the car. Appellant was drinking beer in the car, and when the foursome went to appellant's apartment after the incident with Sapp, appellant offered the three minors beer, which was accepted by the girls. In his testimony, Harris described other evenings at appellant's apartment, during which appellant had offered beer to him and other minors.

1. Appellant contends the trial court erred by denying his motion for a mistrial based on juror misconduct. During its deliberations, the

jury asked the court for a recharge on the assault count, indicating some confusion as to possible lesser included offenses. The trial court recharged the jury as to aggravated assault on a peace officer, aggravated assault, and simple assault. After the recharge, during the noon recess, one juror found a dictionary and looked up definitions for the words "aggravate" and "assault." When the trial judge learned about the juror's action he questioned the juror, who indicated that he had not communicated the information gleaned from the dictionary to any of the other jurors; that he could set aside what he had read in the dictionary; and that what he had read had not caused him to arrive at any conclusions regarding the case. Additionally, after the jury returned its verdict, the trial court questioned each juror individually and confirmed that no definitions had been communicated to any of them other than those given by the trial court in its charge.

The fact that the dictionary definitions were not communicated to the other jurors distinguishes this case from *Moore v. State*, 172 Ga. App. 844 (324 SE2d 760) (1984), cited by appellant. In *Moore*, a juror consulted a book entitled *You and the Law* during an overnight recess, and then discussed what he had read with the other jurors. Although we have found no Georgia case dealing specifically with the issue of whether it is misconduct for a juror to use a standard dictionary, even assuming such conduct is improper the ultimate question here, as in *Moore*, supra, is whether the misconduct was " 'so prejudicial that the verdict must be deemed "inherently lacking in due process." ' [Cit.]" Id. at 846. Given that in the case at bar the dictionary definitions were not communicated to the other jurors, and the juror who consulted a dictionary stated unequivocally that the definitions he found had not influenced his verdict, we find that the juror's conduct was not sufficiently prejudicial to warrant reversal under the standard set forth in *Moore*. Accordingly, the trial court did not err by denying appellant's motion for a mistrial.

2. Appellant maintains that since furnishing alcohol to the minors also constituted the predicate offenses for charging him with maintaining a disorderly house, his conviction for both offenses was violative of OCGA § 16-1-7 (a) (2) because furnishing alcohol to the minors, OCGA § 3-3-23 (a) (1), was simply a more specific example of the general prohibition against maintaining a disorderly house. OCGA § 16-11-44. See generally *State v. Estevez*, 232 Ga. 316, 319-320 (1) (206 SE2d 475) (1974). We do not agree. Although evidence that appellant encouraged drinking was necessary to prove both offenses, it was necessary in proving violations of OCGA § 3-3-23 (a) (1) to establish that appellant personally furnished alcoholic beverages to people under the legal drinking age. That was not a required element in proving a violation of OCGA § 16-11-44, which required proof that the accused kept and maintained premises which are "common, ill-

governed, and disorderly . . ., to the encouragement of . . . drinking." Thus, because each of the offenses has elements not required by the other, each prohibits "a distinct type of criminal conduct different in both gravamen and societal norm from the other [charge]," *State v. Evans*, 192 Ga. App. 216, 221 (I) (384 SE2d 404) (1989), and the offenses do not fit the requirements for merger under OCGA § 16-1-7 (a) (2).

3. We find no merit in appellant's contention that the trial court erroneously denied his motion for a directed verdict of acquittal made on the ground that the State had not proved that his house was a "drinking" house. In rejecting a constitutional challenge to OCGA § 16-11-44, the Supreme Court held in *Hubbard v. State*, 256 Ga. 637, 638 (352 SE2d 383) (1987) that prosecution under that statute required a showing of " 'not casual occurrences but general, customary habits of the house.' " The evidence in this case showed that appellant had encouraged at least four different minors to drink alcoholic beverages in his home on at least three different occasions. Although it is possible that a different jury might have reached a contrary verdict on this charge based on the evidence presented, we find this evidence in keeping with the direction in *Hubbard*, supra, and thus sufficient to authorize the jury to convict appellant of violating OCGA § 16-11-44 under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Compare *Palfus v. State*, 36 Ga. 280, 284-285 (1867).

4. Appellant enumerates error in the trial court's charge on aggravated assault of a police officer, arguing that the trial court failed to follow the Supreme Court's holding in *Bundren v. State*, 247 Ga. 180 (274 SE2d 455) (1981). In *Bundren*, the Supreme Court held that knowledge that the victim was a police officer is an essential element of the crime of aggravated assault on a police officer (OCGA § 16-5-21 (c)). *Bundren*, supra at 181-182 (2). In *Duncan v. State*, 163 Ga. App. 148 (1) (294 SE2d 365) (1982), this court held that even while "moonlighting" as a private security guard, a uniformed police officer was performing "official duties" when he took action to enforce the law and maintain the peace because all law enforcement officers are charged with the duty to do so at all times. In the case at bar, the transcript reveals that the trial court instructed the jury fully on assault, giving sequentially the statutory definitions of simple assault, aggravated assault, and aggravated assault on a police officer. Following that, the trial court specifically charged the jury that "the State has the burden of proof that [appellant] knew that . . . Sapp was, in fact, a police officer at the time of the alleged assault, and also the State has the burden of proving that at the time of the alleged assault . . . Sapp was engaged in official duties as a peace officer, and if you should find that [appellant] did not know that he was a police officer

or if you find that he was not engaged in the performance of his official duties, then it would be your duty to acquit [appellant.]" Drawing on this court's language in *Duncan*, supra, the trial court then instructed the jury that "in addition to specified duties all law enforcement officers have the general duty to enforce the law and maintain the peace. They carry this duty twenty-four hours a day on duty and off duty," and followed that with the instruction that a warrantless arrest may be made by a police officer if he has probable cause to believe an offense is being committed in his presence, and the definition of probable cause.

As best we can understand it, appellant's argument is that the trial court did not properly link its definition of probable cause with an explanation to the jury that it should consider whether probable cause existed in conjunction with deciding whether Sapp was engaged in the performance of official duties. "It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error. [Cits.]" *Williams v. State*, 249 Ga. 822, 825 (3) (295 SE2d 293) (1982). The charge given here, taken as a whole, clearly instructed the jury of the factors it was to consider in its deliberations, including the issue raised by appellant, and consequently we find no error. See generally *Sharp v. State*, 192 Ga. App. 353, 354-355 (2) (385 SE2d 23) (1989).

*Judgment affirmed. McMurray, P. J., and Carley, J., concur.*

DECIDED JANUARY 7, 1991.

*Bailey & Bearden, J. Lane Bearden*, for appellant.

*Darrell E. Wilson, District Attorney, Sharon A. Moyer, Assistant District Attorney*, for appellee.

