A94A2298. STEELE v. THE STATE.
A94A2299. BURKE v. THE STATE.
A94A2300. MATTHEWS v. THE STATE.
A94A2301. STANFORD v. THE STATE.
(454 SE2d 590)

SMITH, Judge.

Johnny Lee Steele, Worth Talmadge Matthews, Robert Lee Burke, and Michael Bernard Stanford were indicted for the murder of Mary Carswell and convicted by a jury of voluntary manslaughter. OCGA § 16-5-2. Motions for new trial were made and denied as to all four defendants and they appeal.

1. Matthews enumerates as error the trial court's failure to direct a verdict of acquittal in his favor. Construed to support the jury's verdict, the evidence showed that an argument over a pool game in a nightclub escalated into a gun battle in the club's parking lot. A stray bullet travelled through the wall of the club and severed an artery in the victim's leg, causing her death from loss of blood. Matthews did not fire his pistol, but Stanford asked for and obtained Matthews' pistol to fire at Steele. A ballistics expert testified that a bullet from Steele's pistol killed the victim.

Matthews sought a directed verdict on the basis that he did not "directly cause" the victim's death, citing *Hill v. State*, 250 Ga. 277, 279-280 (1) (b) (295 SE2d 518) (1982). As noted in *Scott v. State*, 252 Ga. 251 (313 SE2d 87) (1984), *Hill* is easily distinguished, because in that case an innocent bystander was killed by police returning the defendant's fire, and the homicide was not committed by the defendant or " 'by someone acting in concert with him.' [Cit.]" 252 Ga. at 251-252. The *Hill* court also acknowledged the potential responsibility of a "party to the crime" under OCGA § 16-2-20 (formerly Ga. Code Ann. § 26-801), but held that Code section did not apply to the facts before it. 250 Ga. at 280, n. 3.

In contrast to the situation in *Hill*, Matthews was acting in concert with the other participants in the gunfight by providing a pistol to Stanford. While mere presence at the scene of a crime alone does not support a conviction, "presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." (Citation and punctuation omitted.) *Kimbro v. State*, 152 Ga. App. 893, 894 (264 SE2d 327) (1980). Participation in mutual combat by providing a weapon to one of the other parties is sufficient to support a conviction for voluntary manslaughter as a party to the crime under OCGA § 16-2-20 (b) (3). See *Coker v. State*, 209 Ga. App. 142 (433 SE2d 637) (1993); *Shehee v. State*, 167 Ga. App. 542 (307 SE2d 54) (1983).

Matthews contends he is entitled to a directed verdict because Stanford's testimony regarding his participation in the gunfight was uncorroborated. "In Georgia, a defendant may not be convicted on an accomplice's uncorroborated testimony. The required corroboration must be independent of the accomplice's testimony and it must connect the defendant to the crime or lead to the inference that he is guilty. . . . However, OCGA § 24-4-8 provides that corroborating circumstances may dispense with the necessity for the testimony of a second witness. Slight corroborative evidence from an extraneous source is all that is required to support the verdict, and it may be by circumstantial evidence. It is for the jury to decide whether the evidence offered as corroboration is sufficient to support a conviction, and if the verdict is founded on slight evidence of corroboration connecting the defendant with the crime, it can not be said as a matter of law, that the verdict is contrary to the evidence." (Citations and punctuation omitted.) *Fain v. State*, 211 Ga. App. 399, 400-401 (439 SE2d 64) (1993).

In Matthews' statement to the police he admitted he took his pistol from his pocket and said "I have a gun" when Stanford asked if anyone had one. He also told Stanford the pistol would not work while the safety was on after Stanford unsuccessfully attempted to fire it. While Matthews now argues that Stanford snatched the pistol away from him and his comments were merely in the nature of a protest, this issue was for the jury to decide. There was evidence, including corroboration, from which a reasonable trier of fact could conclude that Matthews' participation in the gunfight was sufficient to support a conviction for voluntary manslaughter beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). But see *Foster v. State*, 264 Ga. 369, n. 2 (444 SE2d 296) (1994), questioning "whether a charge on voluntary manslaughter is even authorized under the circumstances presented here," in the absence of provocation by the victim. However, in deciding *Foster*, the Supreme Court assumed the charge was correct, and relegated its

query on the authorization of the charge to a footnote. Under these circumstances, we decline to follow the dicta in *Foster* with respect to the sufficiency of the evidence. See *Coker v. State*, 209 Ga. App. 142, 143 (433 SE2d 637) (1993).

2. All four defendants enumerate as error the refusal of the trial court to grant a new trial based upon the conduct of a juror during deliberations. The jurors requested a recharge on the definitions of felony murder and voluntary manslaughter shortly before ending deliberations for the evening. During the overnight recess, one juror copied a portion of the 1971 World Book Encyclopedia containing definitions of manslaughter, voluntary manslaughter, involuntary manslaughter, and a statement of the "usual penalty in the U. S." for these offenses, which differs from the penalty in Georgia. The juror read from her notes to the other members of the jury, and other jurors testified they relied on that information in reaching their verdict. At least one juror testified she specifically relied upon the information regarding sentencing.

"There is a presumption of prejudice to the defendant when an irregularity in the conduct of a juror is shown and the burden is on the prosecution to prove beyond a reasonable doubt that no harm has occurred. [Cit.]" *Lamons v. State*, 255 Ga. 511, 512 (340 SE2d 183) (1986). "There is no question that the juror's study of 'law' other than that charged by the trial court was misconduct and though it was honest in its intent, it was nevertheless intentional. . . . The question to be determined here is whether such study or gathering of extrajudicial law was 'so prejudicial that the verdict must be deemed "inherently lacking in due process." ' [Cit.] Under the particular facts of this misconduct, in light of the trial evidence, we are compelled to hold that it was." *Moore v. State*, 172 Ga. App. 844, 845-846 (324 SE2d 760) (1984).

As in *Moore*, the jurors were thoroughly examined as to the circumstances of the verdict and the juror's study of other law and communication of that law to the other jurors. From their testimony, "[w]e can only conclude that the entire jury was subjected to the charge of extrajudicial 'law.' " 172 Ga. App. at 846. Compare *Tate v. State*, 198 Ga. App. 276 (1) (401 SE2d 549) (1991) and *Jordan v. State*, 207 Ga. App. 710 (429 SE2d 97) (1993), in which the information was not communicated to other jurors. The extrajudicial law offered to the jury in this case was prejudicial, particularly as it pertained to sentencing. This is true not only because the information was not in accord with Georgia law (see OCGA § 16-5-2) but because sentencing is a matter outside the purview of the jury. See *Howard v. State*, 213 Ga. App. 542, 543 (1) (b) (445 SE2d 532) (1994). Therefore, we cannot say it was highly probable the verdict was not affected by the jury misconduct. Under these circumstances, the use of extrajudi-

cial law was so prejudicial as to be inherently lacking in due process. This jury misconduct cannot be ignored, and it requires a reversal of the jury's verdict and a new trial.

3. Burke enumerates as error the trial court's denial of his motion to sever. This enumeration is controlled by *Chandler v. State*, 213 Ga. App. 46, 47 (1) (443 SE2d 679) (1994). The relevant evidence against the co-defendants was unambiguous, the applicable law was straightforward, and there was no evidence of "spillover" effect from one co-defendant to another. The existence of antagonistic defenses, the inculpatory testimony of Stanford, or the loss of the right to make opening and closing statements to the jury do not constitute a showing of prejudice amounting to a denial of due process. " 'Absent a showing that (the defendant) was in some way prejudiced by the refusal to sever, no abuse of discretion is demonstrated, and the trial court's ruling will be upheld. (Cits.)' [Cit.]" Id. at 47.

4. Burke and Matthews contend the trial court erred in allowing a police investigator to remain at counsel table during trial before being called as a witness for the State. This contention is without merit. No abuse of discretion by the trial judge was shown. *Thayer v. State*, 189 Ga. App. 321, 325 (3) (376 SE2d 199) (1988).

5. Burke and Matthews also contend the trial court erred in refusing to allow them to cross-examine co-defendant Steele without giving up their right to open and close the concluding arguments to the jury. "However, the right of a defendant introducing no evidence at trial to open and close the final argument is not absolute." *Rogers v. State*, 205 Ga. App. 739, 744 (6) (423 SE2d 435) (1992). The cross-examination of a witness in the case constitutes the "introduction of evidence" within the meaning of OCGA § 17-8-71. *Lackey v. State*, 246 Ga. 331, 337 (10) (271 SE2d 478) (1980). Burke and Matthews were not denied the right to cross-examine witnesses or the right to open and close under OCGA § 17-8-71. They were required to choose, and they did so. This enumeration of error is without merit.

6. Burke and Matthews also complain that the trial court failed to give their requested charge on involuntary manslaughter and that the trial court's charge on voluntary manslaughter constituted an erroneous "sequential" charge under *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992). Because the propriety of the charges to the jury will depend upon the facts developed in the retrial of the case, we do not address the issue of the court's charges in the first trial. However, we note in this regard the recent decisions of *Foster v. State*, 264 Ga. 369 at 370 (1), *Shaw v. State*, 263 Ga. 88 (428 SE2d 566) (1993), and *Waugh v. State*, 263 Ga. 692 (2) (437 SE2d 297) (1993).

7. We have examined appellants' remaining enumerations of error and find that they either are unlikely to recur upon retrial or are without merit.

*Judgments reversed. McMurray, P. J., and Pope, P. J., concur.*

DECIDED FEBRUARY 10, 1995.

*Merrill, Stone & Parks, George R. Parks, Jr.,* for appellant (case no. A94A2298).

*Reeves & Palmer, Kathy S. Palmer,* for appellant (case no. A94A2299).

*Lovett Bennett, Jr.,* for appellant (case no. A94A2300).

*Thomas J. O'Donnell,* for appellant (case no. A94A2301).

*Richard A. Malone, District Attorney,* for appellee.