**FIFTH DIVISION
MCFADDEN, P. J.,
BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 15, 2018**

# In the Court of Appeals of Georgia

A17A2117. LYNN v. THE STATE.

MCFADDEN, Presiding Judge.

After a jury trial, Herbert Martin Lynn was convicted of one count of burglary and one count of theft by taking. He appeals, arguing that the trial court committed harmful error by excluding certain testimony as hearsay. We agree. So we reverse.

We do not reach most of Lynn's other claims of error because they are not likely to occur upon retrial. We do address Lynn's claim that he received ineffective assistance of counsel related to the failure to timely file a motion to suppress because the pretrial suppression ruling may be relevant upon retrial. We reject that claim because Lynn has not made a strong showing that the damaging evidence would have been suppressed had counsel timely filed the motion.

1. *Facts*.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence showed that Dan and Harlee Skelton owned the Garden Wright Nursery, a retail garden center. The Skeltons were unable to re-finance the mortgage on the property and the bank foreclosed on their loan, publishing notice of a foreclosure sale on a particular Tuesday. In anticipation of the business closing, the Skeltons held a liquidation sale of their inventory. Afterwards, they began removing to their residence the several hundred items that had not sold. They worked through the week but did not finish, then locked the property and barricaded the driveways for the weekend.

When Dan Skelton returned to the garden center on Monday morning, he saw that almost all the property was gone. He called the sheriff's department to report the apparent crime. At some point, whether before or after Skelton called the sheriff is unclear, a neighbor told Skelton that he had seen Lynn on the property Sunday removing items. A deputy arrived at the garden center and Skelton told him that he knew where the property was. Lynn went to the garden center while law enforcement officers were there. He told an investigator that he had taken some of the property, which was on a trailer at his house. Lynn returned to the nursery within the hour with his truck and trailer. Several missing items, including four or five metal tables, a tree

boom, some broken brooms, and bales of pine straw, were on the trailer. Lynn said that was all the property he had taken.

Later that night, Skelton accompanied law enforcement officers to Lynn's residence to identify property that had been taken from the nursery but not returned by Lynn. Skelton removed 15 to 20 truckloads of items from Lynn's property, including a Japanese maple tree worth $800, a metal washbasin, hoses, several hundred hooks used for hanging baskets, drainage pipe, a piece of decorative wrought iron fence, ground cover mat, ornamental cabbage plants, spray paint, concrete pots, grapevine plants, and an extension ladder.

Lynn testified on his own behalf. He testified that he was interested in buying the real estate at the foreclosure sale, so that Sunday he went to the garden center to assess it. While he was there, he met a woman named Sheila Lanier. The trial court refused to allow Lynn to testify about the content of his conversation with Lanier on the ground that the testimony would be hearsay. But he did allow Lynn to testify that after meeting Lanier, Lynn believed that the property at the garden center had been abandoned and that he had permission to take it. Lynn testified that he returned to his house, then he, his wife, and his children drove two trucks, one with a trailer, to the garden center and spent 20 minutes loading some of the property onto the trailer.

3

The next day, according to Lynn, a neighbor called Lynn's wife and told her that a police officer was at the nursery. Lynn drove over, spoke with an investigator, and admitted that he and his family had taken some things. Lynn returned the items and apologized for any misunderstanding. Lynn testified that as he was speaking with the investigator again about Sheila Lanier, Skelton walked up and denied knowing her.

Lynn testified that the items listed on the search warrant and seized were items that he had purchased from the garden center and other businesses before this incident. He submitted into evidence receipts for items he had purchased and photographs taken before the incident showing items of property alleged to have been stolen.

At the sentencing hearing, the trial court allowed Lynn to make a proffer of his testimony about Sheila Lanier. He testified in great detail about their conversation. These details supported his defense that his belief that he was free to take the property was reasonable. Specifically, Lynn testified that Lanier told him that she was a "very close friend to the family" and that she "loved them to death" Lanier told Lynn that she was a teacher at a particular elementary school and that her husband was a minister. According to Lynn, Lanier called the Skeltons' children by name and talked

about church events the two families attended together. Lanier related to Lynn that Harlee Skelton "had done nothing but cry about losing the business." She told him that the Skeltons were " making good money [and] current on their payments but that the bank had called their note due for no reason at all."

According to Lynn, Lanier told him that the Skeltons had told Lanier that they had to be off the property by March 1. She asked Lynn if he had seen the foreclosure advertisement. Lanier explained to Lynn that she had been at the garden center for four days in a row trying to catch the large Koi goldfish. She told Lynn that "Dan and Harlee" had given them to her the prior week. They said they would love to keep them, but they didn't have anywhere to put them. Lynn testified that he asked Lanier if she knew how much was owed on the property and Lanier said yes, it was 500 and some odd thousand dollars, giving the exact amount, although Lynn could not recall the precise amount.

According to Lynn, Lanier told him that it broke her heart that she could not help the Skeltons, but they said that the bank refused to work with them anymore. Lynn testified that Lanier told him that when she talked with the Skeltons a couple of days before, they told her that they were finished getting what they wanted; they had stuff piled up everywhere and simply didn't have anywhere else to put any more.

According to Lynn, Lanier told him that the Skeltons said that if there was anything left that Lanier or anyone else could use, they were welcome to it, but that they would have to get it as soon as possible because the bank had already said that they had to be gone from the property by March 1st and that the property would actually be sold on the courthouse steps Tuesday morning.

According to Lynn, Lanier said that the Skeltons told the prior owner the same thing: get whatever he wanted and tell anyone else he knew after he got what he wanted. Lynn testified that Lanier said, "So if there's anything that you want, you had better get it now, because after Tuesday morning, no one will be able to take anything. Because the property will belong to someone else."

After this conversation, Lynn testified, he went home then returned to the garden center with his truck, trailer, and family. According to Lynn, Lanier introduced herself to Lynn's wife and children, who began helping her load pavers into her truck.

2. *Exclusion of testimony*.

Lynn argues that the trial court committed reversible error by preventing him from testifying about the details of his conversation with Sheila Lanier. We agree.

Lynn's defense, in part, was that, after speaking with Lanier, he believed that the property was abandoned. He sought to testify about his conversation with Lanier to demonstrate the reasonableness of his belief. The trial court concluded that Lynn could not testify about what Lanier had told him because that testimony was hearsay.

Former OCGA § 24-3-1 (a) defined hearsay as evidence "which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons."[1] "Hearsay is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. [Cits.]" *Bates v. State*, 322 Ga. App. 319, 327 (5) (744 SE2d 841) (2013) (punctuation omitted).

Lynn's proffered testimony about what Lanier told him was not hearsay because he did not offer it to prove the truth of the matter asserted. That is, it was offered to prove what Lanier said to Lynn, not what Skelton said to Lanier; it rested on Lynn's credibility, not Lanier's. Lynn sought to introduce this evidence to

[1]The new Evidence Code defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OCGA § 24-8-801 (c). However, because this case was tried before January 1, 2013, our new Evidence Code does not apply. See Ga. L. 2011, pp. 99, 214, § 101.

7

demonstrate that he reasonably believed he could take the property because it had been abandoned. See *Graham v. State*, 331 Ga. App. 36, 39 (2) (769 SE2d 753) (2015) (testimony concerning an out-of-court statement was not offered for its truth, but to explain its effect on those who heard the statement and their subsequent conduct, and was, therefore, admissible as nonhearsay). See also *United States v. Hanson*, 994 F2d 403, 406 (7th Cir. 1993) ("An out of court statement that is offered to show its effect on the hearer's state of mind is not hearsay.") (citations omitted).

The state concedes that Lynn's proffered testimony about what Lanier told him was not hearsay. But, it argues, the exclusion of the testimony was harmless for two reasons: (1) Lynn's belief that he could take the property was not relevant; and (2) the testimony Lynn sought to introduce was cumulative.

(a) *Relevancy*.

The state argues that the exclusion of the testimony was harmless error because the testimony was not relevant. Lynn sought to introduce the testimony to demonstrate that he only took property that he reasonably believed he could take. According to the state, the only property for which Lynn was indicted, however, was property that Lynn denied taking at all: he was not indicted for the property he admitted taking and returned to the garden center; he was only indicted for the

8

property that he denied taking and claimed that he had purchased earlier. Since he was not indicted for taking the property he admitted taking, the state argues, whether he reasonably believed he could take that property was not relevant. We disagree. Regardless of whether Lynn's belief was relevant to the theft charge, it was relevant to the burglary charge.

At the time of the incident, OCGA § 16-7-1 (a) provided, "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within . . . any . . . building. . . ." OCGA § 16-7-1 (a) (2011).[2] The indictment accused Lynn of committing burglary by entering a building on the garden center premises with the intent of committing a theft. "To convict of the crime of burglary it is not sufficient merely to prove an illegal entry, but there must also be evidence from which the jury may conclude that there was an intent to commit a theft or felony. The question of intent is for the determination of the jury under the facts and circumstances proved." *Griffin v. State*, 148 Ga. App. 311 (1) (251 SE2d 161) (1978) (citation and punctuation omitted). And "gathering

---

[2]For crimes occurring on or after July 1, 2012, the burglary statute has been amended to provide for the offenses of burglary in the first degree (which involves entry into the dwelling place of another) and burglary in the second degree (which involves entry into any building not used as the dwelling place of another). See OCGA § 16-7-1 (2012); 2012 Ga. Laws 709 § 9-1 (a).

9

abandoned property . . . is not a crime." *McNeese v. State*, 186 Ga. App. 410, 411 (2) (367 SE2d 235) (1988). The state concedes that at least some of the items that were allegedly removed from garden center buildings were items that Lynn later returned because he took them under the belief that they were abandoned. So whether Lynn had the intent to commit theft or instead believed the property to have been abandoned when he allegedly removed property from buildings was relevant to the burglary charge.

(b) *Cumulative*.

The state also argues that the trial court's error was harmless because the excluded testimony was cumulative of admitted evidence. It argues that there is little material difference between what Lynn proffered and what the jury actually heard. We disagree.

"In determining whether [an] error [in admitting or excluding evidence] was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so. The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." *Smith v. State*, 299 Ga. 424, 432 (2) (d) (788 SE2d 433) (2016) (citation, punctuation, and footnote omitted).

The state argues that Lynn's proffered testimony was cumulative of the investigator's testimony and an audio recording played for the jury of the conversation with Lynn when Lynn returned to the garden center. The investigator testified at trial that Lynn said that the previous day, he had met a woman named Sheila who told him that she was good friends with the Skeltons and that the Skeltons had given permission for anyone to take whatever they wanted from the nursery. The jury heard the following when the state played the audio recording:

> LYNN: [S]omeone got the wrong idea here . . . of what's going on. . . . I stopped down yesterday evening, there was a lady out here who's friends with Harlee and Dan, and she's gathering up some stuff and one thing or another. She -- we talked for 30 minutes or whatever. Her name's Sheila. . . . She's friends with them. She told me that Dan and them told her that they were done here. And I know Dan left here Friday night with tractors and everything, he left. She told me that Dan told [the former owner] and her that he was done here, anything else anybody wanted to come and help their self. And so, and of course we ain't touched no (Inaudible) or anything like that. We got a few tables and crap like that, junk mostly. But I just want to make sure that we're cleared that they ain't -- this ain't something where we stole anything, you know.
> INVESTIGATOR: Okay. Well, obviously Dan and them are here.
> LYNN: Right. I'll be glad to talk to him.
> INVESTIGATOR: Okay.
> LYNN: I'm sure he'll know who this Sheila lady is and --
> INVESTIGATOR: Okay. Sheila doesn't own this place; right?
> LYNN: I don't reckon.
> INVESTIGATOR: Okay.
> LYNN: But she says she's very good friends with them.

11

INVESTIGATOR: What's her last name?

LYNN: (Inaudible). I'm sure they'll know though because I mean, she talked to me in great depth about the whole situation.

INVESTIGATOR: What does Sheila drive?

LYNN: It was a pickup truck, yeah.

INVESTIGATOR: So, then you came down here and (Inaudible).

LYNN: (Inaudible) like I said she filled me in on all the great details of, you know, today was their last day of ownership of the property. That everything that was on the property was free for the taking. And --

INVESTIGATOR: Well, if they didn't --

LYNN: -- (Inaudible) the buildings.

INVESTIGATOR: -- but I mean if -- if they didn't own the property, if it was their last day of ownership, I mean somebody owns it; right?

LYNN: Right.

INVESTIGATOR: Okay.

LYNN: Yeah. I'm assuming that Dan and Harlee still own it.

INVESTIGATOR: Okay. Well -- but she told you it was their last day of ownership and everything was free for the taking, but

LYNN: Yes.

INVESTIGATOR: -- if it's their last day of ownership then what happens then or what would your assumption be? Would the bank own it or –

LYNN: Well, the bank owns the property and structures.

INVESTIGATOR: Okay. it's pretty obvious.


When Skelton testified, he adamantly denied that he knew Sheila Lanier other than as a customer who had come into the garden center a handful of times. He testified that there was no reason for anyone to believe that they were good friends. The erroneously excluded testimony would have allowed the jury to conclude that Lynn reasonably believed that Lanier, a school teacher married to a pastor, was

12

credible; that Lanier, who referred to the Skeltons and their children by their first names and said they attended church events together, knew the Skeltons very well, contrary to Skelton's testimony adamantly denying that he knew Lanier; and that the Skeltons had communicated to her the business's financial situation down to the exact amount they owed on the property. In other words, the testimony might have persuaded a juror that Lynn reasonably believed Lanier's representation that the property at the garden center was there for the taking and so raised a reasonable doubt — in spite of Skelton's testimony that he did not know Lanier. The audio recording and the investigator's testimony included none of the details that strengthened Lynn's defense.

"[W]e cannot say that it is highly probable that the [trial court's] error [in excluding this testimony] did not contribute to the judgment, and we therefore must reverse the conviction[s]." *Boivin v. State*, 298 Ga. App. 411, 414 (2) (680 SE2d 415) (2009) (citation and punctuation omitted). See *Burris v. State*, 204 Ga. App. 806, 809-810 (2) (420 SE2d 582) (1992) (finding that the trial court's exclusion of certain evidence was reversible error, explaining that if the evidence was enough to raise a reasonable doubt of the defendant's guilt in the mind of a juror, it was adequate to change the outcome of the case). Compare *Cochran v. State*, 276 Ga. 283, 285-286

(3) (576 SE2d 867) (2003) (even if court erred in excluding statement as hearsay, error was harmless because statement did not support defendant's testimony or his defense of accident).

3. *Counsel's failure to timely file motion to suppress.*

Lynn argues that he received the ineffective assistance of counsel due to the failure to file a timely motion to suppress. We disagree. We address this issue because the pretrial suppression ruling potentially could be at issue on retrial.

"When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." *Mastrogiovanni v. State*, 324 Ga. App. 739, 742 (2) (751 SE2d 536) (2013) (citation and punctuation omitted). Lynn argues that had counsel timely moved to suppress the items seized from his house, the trial court would have granted the motion because the warrant was illegally executed. See OCGA § 17-5-30 (a) (2) ("A defendant aggrieved by an unlawful search and seizure may move the court . . . to suppress . . . evidence . . . on the grounds that: The search and seizure with a warrant was illegal because . . . the warrant was illegally executed.").

Lynn argues that law enforcement officers disregarded the terms of the warrant during its execution; the warrant did not authorize Skelton to "tak[e] whatever he wanted to take"; and law enforcement officers did not exercise their independent judgment to determine whether probable cause authorized the seizure of items found in plain view. Contrary to Lynn's argument, law enforcement officers did not seize the items under the plain view doctrine. Rather, in addition to a list of specific items, the warrant authorized the seizure of "any other property stolen but not yet discovered by the owner of Garden Wright Nursery." Our Supreme Court has

> approved the use of such [residual] clauses, holding that a warrant's authorization to search for specified items of potential evidence, as well as for "other related items to the crime of murder," or for "any other fruits of the crime of murder," [for example,] is sufficiently particular and does not authorize a general search in violation of the Fourth Amendment.

*Reaves v. State*, 284 Ga. 181, 185 (2) (d) (664 SE2d 211) (2008)."[T]he proper inquiry is simply whether . . . the officers reasonably believed the warrant authorized [the] seizure" of the items taken. *Miller v. State*, 219 Ga. App. 213, 217 (2) (464 SE2d 621) (1995).

15

Lynn has not made "a strong showing that the damaging evidence would have been suppressed had counsel made [a timely] motion" to suppress. *Mastrogiovanni*, 324 Ga. App. at 742 (2), and he has not shown the ineffective assistance of counsel in this regard.

4. *Remaining enumerations of error*.

Lynn argues that he received ineffective assistance of counsel when trial counsel failed to investigate and present evidence from five witnesses who were present with Lynn at the garden center; trial counsel failed to object to hearsay and elicited hearsay; trial counsel failed to request a jury instruction that the state had the burden of proving beyond a reasonable doubt that the property was not abandoned; and trial counsel failed to object to a "willful blindness/deliberate ignorance" jury instruction. "We need not address the remaining enumerated errors alleging ineffective assistance of counsel because they are not likely to occur upon retrial." *Lewis v. State*, 283 Ga. 191, 196 (7) (657 SE2d 854) (2008) (punctuation omitted).

Finally, Lynn argues that the trial court committed plain error by failing to instruct the jury that the state had the burden of proving beyond a reasonable doubt that the property was not abandoned. "Because the propriety of the charges to the jury will depend upon the facts developed in the retrial of the case, we do not address the

16

issue of the court's charges in the first trial." *Steele v. State*, 216 Ga. App. 276, 279 (6) (454 SE2d 590) (1995), overruled in part on other grounds, *Kennebrew v. State*, 267 Ga. 400, 404 (4) n. 2 (480 SE2d 1) (1996).

*Judgment reversed. Branch, J. concurs. Bethel, J., concurs in part, dissents in part, and concurs in the judgment.\**

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY.  COURT OF APPEALS RULE 33.2.**

A17A2117.  LYNN v. THE STATE.

BETHEL, Judge, concurring in part, dissenting in part, and concurring in judgment.

1. As to Division 2 of the majority opinion, I agree that the trial court erred by barring Lynn from testifying about his conversation with Sheila Lanier, as that testimony was not offered for its truth but rather for its effect on Lynn's state of mind and its impact on his later actions. As such testimony is not hearsay, it should have been admitted.

However, I disagree that this error was harmful because the trial court permitted Lynn to testify that he had spoken with Lanier and that based on that conversation he believed he had permission to take items from the garden center.

Moreover, through an audio recording played by the State, the jury also heard Lynn discussing his conversation with Lanier with a police investigator in which Lynn tells the investigator that Lanier told him the "property was free for the taking." Because the jury was presented with this information, it is unlikely that additional detail about the conversation between Lynn and Lanier would have impacted the jury's deliberation. Further, within the context of the balance of the evidence, including the fact that Lynn did not return the totality of the property, the jury is unlikely to have reached a different verdict had they heard the specifics of Lynn's recollection of his conversation with Lanier. I would therefore affirm as harmless error the trial court's exclusion of this testimony. Accordingly, I dissent from Division 2 of the majority opinion.

2. As to Division 3 of the majority opinion, I agree that the officers executing the warrant had a reasonable basis to believe that the warrant's residual clause authorized the seizure of the items taken from Lynn's residence. I thus agree with the Presiding Judge that Lynn has not demonstrated that he received ineffective assistance of counsel with regard to his trial counsel's failure to file a timely motion to suppress.

2

3. As to Division 4 of the majority opinion, because I would affirm the trial court's exclusion of Lynn's testimony regarding the contents of his conversation with Lanier as harmless error, it is also necessary to address certain of Lynn's remaining enumerations of error.

(a) Lynn argues that his trial counsel was ineffective due to a failure to object to certain hearsay testimony offered by the State and by eliciting hearsay testimony from a defense witness that directly contradicted Lynn's defense theory. I agree with Lynn that his counsel was deficient in failing to object to these statements and that this deficiency prejudiced Lynn's defense. I would therefore grant him a new trial on this basis.

The State called Jimmy Pearson to testify. He testified that he saw Lynn's truck at the nursery late on Sunday afternoon and that the truck had tables stacked on it. He testified that he did not see anyone next to the truck.

Later, the State called Jerry Pearson and Skelton to testify. They testified that Jimmy Pearson had told them that he had seen Lynn next to his truck that afternoon and that Lynn had been at the property all day, making several trips with new loads. A police detective also testified that Jimmy Pearson had told him that he saw Lynn

3

making several trips to the nursery that day. Lynn's trial counsel did not object to the admission of any of these statements.

Under our former evidence code,

The prior inconsistent statement of a witness who is present and available for cross-examination may be admitted as substantive evidence or as impeachment evidence if the time, place, person, and circumstances attending the former statement are called to the witness's mind with as much certainty as possible. The purpose of laying such a foundation is to give the witness the opportunity to explain or deny the prior inconsistent statement. If such a foundation is not sufficiently established, it is error for the trial court to admit a prior inconsistent statement.

*Daniely v. State*, 309 Ga. App. 123, 125-26 (2) (709 SE2d 274) (2011).

In *Daniely*, the witness in question testified before the issue of the statement was raised at trial and was not confronted with the inconsistent statement during her testimony. 309 Ga. App. at 126 (2). We ruled in *Daniely* that such inconsistent statements should not be admitted where the declarant is not afforded an opportunity in court to explain or deny the prior statement. *Id*. The former version of our rule regarding the introduction of prior inconsistent statements specifically permits a

4

witness to be recalled for the purpose of establishing the foundation of a prior inconsistent statement. *See* former OCGA § 24-9-83.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984).

> A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. Further, in evaluating deficient performance, the proper inquiry is focused on what the lawyer did or did not do, not what he thought or did not think, as hindsight has no place in an assessment of the performance of trial counsel.

*Pittman v. State*, 300 Ga. 894, 898 (2) (799 SE2d 215) (2017) (citations and punctuation omitted). In reviewing the trial court's decision, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012) (citation and punctuation omitted).

The trial court in this instance appeared to allow several hearsay statements to be admitted throughout the trial when the declarant was scheduled to testify later in the case. However, that policy does not address the admission of statements made by witnesses who have already testified and who were not confronted with their own inconsistent words. Because trial counsel did not object to the introduction of these statements and because Jimmy Pearson was never recalled to the stand and confronted with the discrepancy between his trial statement and the statements he apparently made to Skelton, Jerry Pearson, and the investigator, trial counsel was deficient in failing to object to the hearsay testimony.

Moreover, Jimmy Pearson's statements to Jerry Pearson, Skelton, and the investigator, if credited by the jury, suggest that Lynn not only lied throughout his testimony but that he made enough trips to the garden center on Sunday to take all of the items alleged to have been stolen. Had Jimmy Pearson's hearsay statements not been admitted, there is a reasonable probability that the outcome of the case could have been different, as Lynn's credibility would not have been subject to such a significant attack and because there would have been no direct evidence that Lynn made sufficient trips to the garden center to take the total number of items that he allegedly stole. I would therefore rule that trial counsel's failure to object to the

6

admission of these hearsay statements constituted ineffective assistance of counsel and would remand this case for a new trial on that basis.

(b) Because certain of Lynn's remaining enumerations of error are relevant to issues that may arise on any retrial of this matter, I believe we should also rule on those enumerations.

(I) Lynn argues that the trial court committed plain error by failing to instruct the jury that the State had the burden of proving beyond a reasonable doubt that the property taken from the garden center by Lynn was not abandoned. We review the jury instructions at issue in this case for plain error, as Lynn did not object below. *See Henderson v. State*, 333 Ga. App. 759, 760 (1) (777 SE2d 48) (2015) (citing OCGA § 17-8-58 (b) and noting that the failure to object regarding a jury instruction at trial precludes appellate review unless "the jury charge constitutes plain error which affects substantial rights of the parties").

> In reviewing for plain error, the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings. If all three questions are answered in the affirmative, the appellate court has the discretion to reverse if the error seriously affects the fairness, integrity, or public reputation of the proceedings below.

*Gilliland v. State*, 325 Ga. App. 854, 856 (2) (a) (755 SE2d 249) (2014) (citation omitted).

"When a defendant raises an affirmative defense and offers evidence in support thereof, the State has the burden of disproving that defense beyond a reasonable doubt." *Bishop v. State*, 271 Ga. 291, 291 (2) (519 SE2d 206) (1999). In this case, despite the State's contention, Lynn explicitly testified as to his belief that the property at the garden center had been abandoned and that he had the right to take it, based on his conversation with Sheila Lanier:

> Q: Mr Lynn, at that point, did you feel you had permission or authority or the property was abandoned sufficiently for you to go down and get some things?
>
> A: Yes. I did feel I had permission at that point.
>
> Q. Okay.
>
> A. And I also felt that the property was abandoned as well.

Although other testimony presented by the State contradicted this assertion, Lynn clearly raised the issue that the property had been abandoned by Skelton and that it was his for the taking.

8

The jury was instructed as to the State's burden of proof on the theft by taking charge and as to the defense of claim of right:

> The burden is upon the State to prove beyond a reasonable doubt the Defendant or under [all] of the circumstances should have known that the goods in question were stolen and were in the Defendant's possession. If there is any reasonable doubt in your mind as to any of the essential elements [then] it would be your duty to acquit the defendant. . . . I will now charge you to the defense of claim of right. It is a defense to a charge of theft by taking . . . that the accused was unaware that the property was that of another or acted under an honest claim of right to the property involved or under the right to acquire or to dispose of it. Should you find from the evidence in this case that the accused acted under such claim of right, as I now instructed you, [then] it would be your duty to acquit the defendant. The burden of proof rests upon the State to prove beyond a reasonable doubt that the accused did not act under an honest claim of right to the property and that the accused was aware that the property was that of another person. If the State fails to prove beyond a reasonable doubt, [then] you should acquit the Defendant.

The trial court also instructed the jury as to abandoned property and the element of knowledge:

> I will now charge you on abandoned property. It is not unlawful to take abandoned property. Knowledge on the part of the Defendant that the crime of the burglary or theft was being committed and the Defendant

9

knowingly and intentionally participated in . . . such crime must be proved by the State beyond a reasonable doubt. If you find from the evidence in this case that the Defendant had no knowledge that a crime was being committed or the Defendant did not knowingly and intentionally commit . . . the alleged offense, then it would be your duty to acquit the defendant.

I find no error in these instructions. There has been no objection from Lynn as to the content of the instruction regarding the defense of claim of right. Moreover, in light of Lynn's testimony both that he believed he had permission to take the property and that he believed it to be abandoned, it was proper for the trial court to instruct the jury both as to the affirmative defense of claim of right and that the taking of abandoned property is not a crime. *See McNeese v. State*, 186 Ga. App. 410, 410 (2) (367 SE2d 235) (1988) ("Appellant's description of his actions shows that he was merely gathering abandoned property, which is not a crime."). As abandonment in this context is not so much an affirmative defense as a factor to be considered in whether Lynn knowingly committed the charged offenses, the trial court properly characterized the State's burden of proof.

(II) Lynn further argues that his trial counsel was ineffective due to a failure to request a jury instruction that the State had the burden of proving beyond a

reasonable doubt that the property taken from the garden center by Lynn was not abandoned. As discussed *supra*, I would hold that the trial court properly instructed the jury as to the issue of abandonment in this case, characterizing it as a factor in Lynn's knowledge that he was committing a crime rather than a classic affirmative defense. I would thus hold that any further instructions on this matter, had they been requested by Lynn, would have been merely repetitive to the claim of right charge. Lynn is thus unable to demonstrate that he was prejudiced by the failure to request further charges on this issue.

(III) Lynn also argues that his trial counsel was ineffective due to a failure of counsel to object to a "willful blindness/deliberate ignorance" jury instruction. I disagree.

"To authorize a jury instruction on a subject, there need only be produced at trial slight evidence supporting the theory of the charge." *Polite v. State*, 273 Ga. App. 235, 242 (8) (614 SE2d 849) (2005). In this case, the State presented evidence that, despite the information he received from Sheila Lanier, Lynn ignored other information that might have led him to question whether the property at the garden center was free for the taking. Specifically, the State points to statements made by Dan Skelton to Lynn that no property would be left behind and that the Skeltons

11

intended to remove everything from the property. Moreover, the State argues that the presence of barricades at the entrances of the property and the locks on the doors should have alerted Lynn that the contents inside were guarded and were not available to be taken.

Although there are numerous other inferences that could be drawn from these facts, including, for example, that the Skeltons planned to remove any residual property left after some of it was given away and that they locked and guarded their facility to prevent squatting or vandalism, a jury could draw the inferences advanced by the State here. There was thus slight evidence supporting the inclusion of the charge to the jury, and it was not error on the trial court to include it. As any objection to the charge as proposed and given would have therefore been meritless, I would find that trial counsel was not ineffective. *See Wesley v. State*, 286 Ga. 355, 357 (3) (e) (689 SE2d 280) (2010).

(IV) Lynn's remaining enumeration of error touches upon whether his counsel was ineffective because he failed to investigate and present evidence from witnesses (his wife, son, daughter, his son's fiancee, and the fiancee's mother and father) who were present with Lynn at the garden center on Sunday. Lynn argues that such witnesses would have testified that he made only a single trip to the garden center on

12

that day, that he had taken only a single truck load of items to his house, that Sheila Lanier told Lynn that the owners had abandoned the items, and that some of the items seized from his home were not obtained from the nursery but had instead been at his house prior to the events giving rise to this case. Moreover, he claims that Lynn's wife would have provided an alibi defense that was not otherwise presented to the jury.

In light of Lynn's claim on appeal that these inactions on the part of his counsel constituted deficient performance, and in light of the dispositions I have proposed for certain other of his enumerations of error, I believe it is unlikely that this issue will recur in any new trial of this case. Therefore, it is unnecessary for us to consider whether trial counsel's failure to call these witnesses constituted ineffective assistance.

For the foregoing reasons, I respectfully concur in part, dissent in part, and concur in judgment.