305 Ga. 383
FINAL COPY

S18A1593. BECK v. THE STATE.

WARREN, Justice.

Dallas Jarvis Beck was convicted of felony murder and possession of a weapon during the commission of a crime in connection with the shooting death of Corey Liverpool.[1] On appeal, Beck contends that the trial court erred by refusing to charge the jury on voluntary manslaughter, that Beck was denied

---

[1] The crimes occurred on August 26, 2012. On May 21, 2014, a Clayton County grand jury indicted Beck for malice murder (Count 1), three counts of felony murder — predicated on aggravated assault, aggravated battery, and possession of a firearm by a felony first offender probationer respectively (Counts 2, 3, and 4), aggravated assault (Count 5), aggravated battery (Count 6), possession of a weapon during the commission of a crime (Count 7), and possession of a firearm by a felony first offender probationer (Count 8). The grand jury also indicted Lakeya Burroughs for simple battery (Count 9) and disorderly conduct (Count 10). Beck was tried separately from July 7 to 11, 2014, and the jury found him guilty of all counts except for malice murder (Count 1). The trial court sentenced Beck to life with the possibility of parole for felony murder (Count 2) and five years to be served consecutively to the life sentence for possession of a weapon during the commission of a crime (Count 7). The other two felony murder counts (Counts 3 and 4) were vacated by operation of law, and the trial court purported to merge the remaining verdicts into the first felony murder (Count 2). Because the State does not challenge this ruling, this Court need not address any issue regarding the sentences. See *Dixon v. State*, 302 Ga. 691, 698 (808 SE2d 696) (2017). Beck filed a timely motion for new trial on July 18, 2014, and an amended motion on April 28, 2015. A hearing was held on April 25, 2017, and continued on October 10, 2017. The amended motion was denied on December 11, 2017. Beck filed a timely notice of appeal on January 2, 2018, and the case was docketed in this Court for the August 2018 term and submitted for a decision on the briefs.

a fair trial because jurors considered extrajudicial information during deliberations in reaching a verdict, and that Beck was denied a fair trial because the trial court refused to admit certain evidence of specific instances of the victim's violent conduct, reputation evidence of the victim, and evidence of the victim's violence-themed tattoos. For the reasons that follow, the judgment is vacated, and the case is remanded with direction.

1. Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed the following. On August 26, 2012, Beck and his girlfriend, Lakeya Burroughs, were both present in her apartment at various points throughout the day leading up to the shooting. That evening, two residents of the apartment complex, Grady Lamb and Valeriea Holiday, sat outside watching children and adults play basketball in the parking lot. Corey Liverpool and Burroughs's son were among those playing. During the game, Liverpool accidentally knocked Burroughs's son to the ground. The son then ran to Burroughs and told Burroughs that Liverpool, whom the son called "Uncle Killer," was outside.

Burroughs grabbed Beck's pistol to confront Liverpool, but Beck took it from her before she left the apartment. Liverpool and Burroughs ended up at the sidewalk between the basketball game and Burroughs's apartment, where

they argued. Burroughs yelled and cursed at Liverpool, shoved him, "grabbed at his private area," and spit on him. Lamb and Holiday, who were watching from their porch, testified that Liverpool appeared calm throughout the confrontation and kept his hands by his side.

During the argument, Beck watched from the breezeway wall directly outside of Burroughs's apartment — pistol in his waistband — approximately three to five feet from Liverpool and Burroughs. After Burroughs spit on Liverpool, Liverpool stepped toward her. Beck then pulled his pistol out, came between them, and stated to Liverpool, "I wish you would." Before Liverpool could react, Beck fired his weapon, shooting Liverpool once in his right eye. Liverpool collapsed, and Beck said to Burroughs, "I told you so, I told you so," and fled, throwing his pistol into the woods behind Burroughs's apartment building. Liverpool did not have a weapon.

At trial, Beck admitted to shooting Liverpool, but claimed that he was acting in self-defense and in defense of Burroughs. Burroughs testified that after she spit on Liverpool, she "seen him about to hit me so I closed my eyes," and then heard a shot. Beck claimed that Liverpool raised his hand and seemed to be either pulling a weapon or preparing to strike Burroughs. To support their version of events, Beck and Burroughs testified that they had known, and

Burroughs had been friends with, Liverpool for several years; that they knew Liverpool by his nickname, "Killer," and believed him to be dangerous and to carry a pistol at all times; and that they believed Liverpool was out to get Beck because of an incident pertaining to a stolen truck in which Beck was involved. Beck further testified about an incident two days before the shooting that he said contributed to his fear of Liverpool: when Beck was at a bus stop picking up Burroughs's children, Liverpool — who was also there picking up children — flashed a pistol at Beck and made a threatening gesture. Beck claimed that these events led to his fear of Liverpool and prompted him to purchase the pistol that he ultimately used to kill Liverpool.

Although Beck has not challenged the sufficiency of the evidence supporting his convictions, it is our customary practice to review the record for sufficiency of the evidence in murder cases. We have done so here and conclude that the evidence presented against Beck was sufficient to authorize a rational jury to find beyond a reasonable doubt that he was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Beck asserts that he was denied a fair trial because jurors considered extrajudicial information regarding sentencing in reaching a verdict. At the

motion for new trial hearing, eleven of the twelve jurors testified regarding this issue.[2]  Three jurors, C. C., A. J., and M. H., testified that the jury discussed sentencing during deliberations.  C. C. and M. H. testified that the sentencing discussions did not affect their verdicts, but A. J. gave inconsistent testimony on this point.  Moreover, when C. C. was asked by defense counsel whether the sentencing information came from other jurors, she responded: "No.  No. It was given to us and I don't know, I don't remember who.  It was, I don't know whether, I don't know.  We, it, nobody brought it, like brought it to court to say hey look what I found.  No.  But, I cannot remember how that was done. I don't remember."  The eight other jurors testified that they did not consider sentencing during deliberations.  In denying the motion for new trial, the trial court relied expressly on C. C.'s and M. H.'s testimony that the sentencing discussions did not affect their verdicts and also on its finding that A. J.'s testimony about sentencing discussions affecting her verdict was not credible because of inconsistencies in her testimony.

For the reasons that follow, we conclude that it is necessary to vacate the trial court's judgment and remand for further consideration of this issue

---

[2] The twelfth juror could not attend the motion for new trial hearing because of medical reasons.

consistent with this opinion.  We have a new Evidence Code provision, see

OCGA § 24-6-606 (b) ("Rule 606 (b)"), that governs what is or is not

admissible to sustain or impeach a verdict.  Rule 606 (b) is borrowed from the

Federal Rules of Evidence and provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify by affidavit or otherwise nor shall a juror's statements be received in evidence as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the jury deliberations or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith; provided, however, that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the juror's attention, whether any outside influence was improperly brought to bear upon any juror, or whether there was a mistake in entering the verdict onto the verdict form.

"When Georgia courts consider the meaning of provisions borrowed

from the Federal Rules of Evidence, they are guided by the decisions of the

federal appeals courts construing and applying the Federal Rules, especially

the Eleventh Circuit." *State v. Holmes*, 304 Ga. 524, 529 (820 SE2d 26) (2018)

(citation and punctuation omitted).  The Eleventh Circuit has held that

> except for testimony concerning extraneous prejudicial information or improper outside influence, Rule 606 (b) (1) prohibits a juror from providing testimony or other evidence about anything that happened or occurred during deliberations, including

a juror's mental processes or the reasons the jury reached a particular verdict.

*United States v. Cavallo*, 790 F3d 1202, 1226 (11th Cir. 2015). Indeed, Rule 606 (b) embodies a "nearly categorical bar on juror testimony," with only three specific exceptions providing the subject matter on which a juror is allowed to testify. *United States v. Foster*, 878 F3d 1297, 1309 (11th Cir. 2018) (specific exceptions under Rule 606 (b) (2) are that "[a] juror may testify about whether: (A) extraneous prejudicial information was improperly brought to the jury's attention; (B) an outside influence was improperly brought to bear on any juror; or (C) a mistake was made in entering the verdict on the verdict form") (citation and punctuation omitted).

Here, despite our admonition in *Davis v. State*, 299 Ga. 180 (787 SE2d 221) (2016),[3] the parties did not brief or argue the meaning of Rule 606 (b) at the motion for new trial hearing, and the trial court did not apply it when addressing the jury misconduct claim raised in Beck's motion. Similarly, the parties do not address the new rule on appeal. The difference between the old

---

[3] In *Davis v. State*, we stated emphatically: "Georgia lawyers do this Court no favors — and risk obtaining reversible evidence rulings from trial courts — when they fail to recognize that we are all living in a new evidence world and are required to analyze and apply the new law. . . . We trust that this shortcoming will not be repeated in future cases coming to this Court." 299 Ga. at 192.

and new Evidence Codes matters in this case. Juror C. C. offered some evidence from which the trial court could conclude that extraneous prejudicial information was brought to the jury's attention when she testified that sentencing information did not come from other jurors and that it was "given to" them.[4] And although the trial court determined that Juror A. J.'s testimony was not credible, it made no finding about Juror C. C.'s credibility and made no finding as to whether "extraneous prejudicial information" was, in fact, brought before the jurors. See *Foster*, 878 F3d at 1310 ("[I]nformation is deemed 'extraneous' if it derives from a source 'external' to the jury." (quoting *Warger v. Shauers*, __ U. S. __ (135 SCt 521, 529, 190 LE2d 422) (2014)). Instead of following the guidelines set forth in Rule 606 (b), the trial court relied on juror testimony about internal jury deliberations to conclude that, even if such information came before the jury, it was not prejudicial. But that type of testimony generally is barred by Rule 606 (b) and may not be used in determining whether extraneous information is prejudicial. See *United States v. Lloyd*, 269 F3d 228, 237 (3d Cir. 2001) (explaining that "a court may inquire into the verdict if extraneous prejudicial information was improperly brought

---

[4] We note that this response was the first part of a longer, equivocal statement on this point.

to the jury's attention or if any outside influence was improperly brought to bear upon any juror . . . [h]owever, the court may only inquire into the existence of extraneous information, and not into the subjective effect of such information on the particular jurors") (citation and punctuation omitted); see also *United States v. Howard*, 506 F2d 865, 868-869 (5th Cir. 1975) (explaining that, under proposed Rule 606 (b), a juror "may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind" and that "the district court must disregard [evidence] purporting to reveal the influence the alleged prejudicial extrinsic matter had upon the jurors, and it must avoid examination concerning any other aspect of the jurors' mental processes"); OCGA § 24-6-606 (b) ("[A] juror shall not testify by affidavit or otherwise nor shall a juror's statements be received in evidence as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the jury deliberations or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith . . . ."). Under these circumstances, it is appropriate to vacate the denial of the motion for new trial and remand for the trial court to apply the new evidentiary rule to Beck's

claim that he is entitled to a new trial.  See *Holmes*, 304 Ga. at 530 (holding that, because the trial court failed to apply a rule of our new Evidence Code, which was borrowed from the Federal Rules of Evidence, in ruling on the defendant's motion for new trial, it was necessary to vacate the trial court's grant of the motion for new trial and remand for proceedings consistent with our opinion). On remand, if the trial court determines that extraneous information was provided to the jury, it will have to evaluate prejudice without the benefit of evidence of internal jury deliberations.  We therefore vacate the trial court's judgment and remand the case for further proceedings consistent with this Court's opinion.

Finally, because Beck's remaining enumerations of error relate to issues that are not likely to recur in the event of a retrial, we do not address them at this time.  If the trial court does not grant Beck a new trial, Beck may file a new appeal and raise those issues in that appeal.  See *Parker v. State*, 296 Ga. 586, 597 (769 SE2d 329) (2015); *Moore v. State*, 290 Ga 805, 810 (725 SE2d 290) (2012).

Judgment vacated and case remanded with direction.  All the Justices concur.

Decided March 4, 2019.

Murder. Clayton Superior Court. Before Judge Collier.

Derek M. Wright, for appellant.

Tracy Graham Lawson, District Attorney, Elizabeth A. Baker, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General, for appellee.