308 Ga. 608
FINAL COPY

S20A0195.  COLLINS v. THE STATE.

MELTON, Chief Justice.

Renita Collins was tried for murder along with co-defendant Michael Stallworth.[1]  Collins appeals her convictions for murder and possession of a firearm during the commission of a felony in connection with the shooting death of Keith Jacobs.[2]    Collins

---

[1] We note that this Court previously affirmed the conviction of Stallworth in *Stallworth v. State*, 304 Ga. 333 (818 SE2d 662) (2018).

[2] On June 3, 2011, a Fulton County grand jury indicted Collins and Stallworth for malice murder, two counts of felony murder predicated on aggravated assault, aggravated assault, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. Following a jury trial that ended on January 31, 2012, Collins and Stallworth were found guilty of all counts.  The trial court sentenced Collins to life in prison for malice murder with five consecutive years for possession of a firearm.  Although the trial court purported to merge the two felony murder counts into the malice murder count, those counts were actually vacated by operation of law. *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993).  The remaining counts merged for purposes of sentencing.  On February 17, 2012, Collins filed a motion for new trial, which she amended on May 14, 2015 and July 15, 2015.  Following two hearings, the trial court denied the motion on February 25, 2016.  Collins filed an untimely notice of appeal on June 21, 2016. On August 16, 2019, the trial court granted Collins's unopposed motion seeking an out-of-time appeal, after which Collins filed a timely notice of appeal.  Her case, submitted for a decision on the briefs, was docketed to the term of this Court beginning in December 2019.

contends that she was denied a fair trial due to juror misconduct, the trial court abused its discretion by not allowing her to subpoena juror testimony to show that misconduct had occurred, and the trial court abused its discretion when it failed to excuse a prospective juror for cause. For the reasons set forth below, we affirm.

1. As was also the case in *Stallworth v. State*, 304 Ga. 333-334 (1) (818 SE2d 662) (2018), viewed in the light most favorable to the verdicts, the evidence presented at trial shows that, on the evening of March 2, 2011, Jacobs and his fiancée, Cassandra Horns, were sitting on the front porch of his Fulton County home when Collins walked up to the edge of the yard. Collins began yelling at Jacobs about Jacobs's dog and threatened to shoot the dog the next time it barked at her. Jacobs and Collins got into a heated argument. Collins left, saying that she would return, and walked to her house, which was nearby.

Jacobs's brother, Michael Walker, came out of Jacobs's house to try to calm Jacobs down. Moments later, Collins returned to Jacobs's house with Stallworth. A new argument ensued. Horns

and Walker both left the porch and went in the house. Shortly thereafter, they heard gunshots. Walker ran outside to find Jacobs fatally wounded from a gunshot to the back of the head.

Multiple witnesses testified that Collins argued with Jacobs, walked to Collins's home, returned to Jacobs's house with Stallworth, continued an argument with Jacobs, and then multiple gunshots were fired. Several witnesses saw people matching Collins and Stallworth's descriptions fleeing from the direction of Jacobs's house. One witness saw Collins with a gun just before the shooting, and another witness saw a person matching Stallworth's description with a gun immediately after the shooting. Two witnesses identified Stallworth from a photographic lineup, and one witness identified Collins from a photographic lineup.

Although Collins does not challenge the sufficiency of the evidence supporting her convictions, as is our customary practice in murder cases, we have reviewed the record and conclude that the evidence presented at trial was sufficient for the jury to find Collins guilty beyond a reasonable doubt of the crimes for which she was

convicted.  *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).  See also *Stallworth*, supra, 304 Ga. at 334 (1).

2.  Collins asserts that she was denied a fair trial due to juror misconduct.  Specifically, she contends that several jurors, in a post-trial conversation with Stallworth's defense counsel, questioned why Stallworth had not testified, and that these questions about Stallworth show that the jurors also held Collins's failure to testify against her, thereby raising a presumption of prejudice against her.  We disagree.

The record shows that, at the conclusion of Collins and Stallworth's trial, the trial court instructed the jury regarding the defendants' presumptions of innocence and to not consider either defendant's election not to testify when determining guilt or innocence.  Immediately following the publishing of the guilty verdicts, counsel for the parties met with the jurors.  A subset of approximately four jurors asked Stallworth's trial counsel why Stallworth had not testified.  Stallworth's counsel responded that

Stallworth had the constitutional right not to testify. When a juror asked again why Stallworth had not testified, his counsel did not answer and redirected the conversation.

At the hearing on Collins's motion for new trial, Stallworth's counsel testified that none of the jurors indicated they had drawn a negative inference from Stallworth's failure to testify. The trial court's staff attorney, who was in attendance at the post-trial meeting, testified that the jurors' questions "seemed to go a little bit beyond curiosity" and that he "got the impression that they were considering [it] in their deliberations."

Collins argues that, although the trial court properly instructed the jury, the jurors engaged in misconduct by not following those instructions. She relies on the attorneys' testimony about their concerns with the jurors' post-trial questions to establish this misconduct. She further argues that the trial court erred by not allowing her to subpoena jurors to help her meet her burden of showing juror misconduct. However, because neither the attorneys' impressions about what the jurors may have considered during their

deliberations nor the jurors' own testimony about their deliberations is admissible evidence, Collins's claim of juror misconduct fails.

Longstanding common law principles prohibit using juror statements or testimony to impeach their own verdict. See *Tanner v. United States*, 483 U. S. 107, 121 (II) (107 SCt 2739, 97 LE2d 90) (1987). This prohibition is embodied within Federal Rule of Evidence 606, from which Georgia adopted its current rule regarding the admissibility of juror testimony. See *United States v. Brown*, 934 F3d 1278, 1302 (III) (B) (3) (11th Cir. 2019). See also *Beck v. State*, 305 Ga. 383, 385 (2) (825 SE2d 184) (2019). OCGA § 24-6-606 states, in relevant part:

> Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify by affidavit or otherwise nor shall a juror's statements be received in evidence as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the jury deliberations or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith; provided, however, that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the juror's attention, whether any outside influence was improperly brought to bear

upon any juror, or whether there was a mistake in entering the verdict onto the verdict form.

OCGA § 24-6-606 (b) ("Rule 606 (b)").[3]   As both the attorney testimony regarding juror statements made during the post-trial conversation, and the juror testimony Collins seeks in order to bolster her claim, fall within Rule 606 (b)'s prohibition against using juror testimony or statements to impeach a verdict, Collins has failed to produce admissible evidence of juror misconduct.

Collins contends that the jury's alleged consideration of her choice not to testify, by itself, constitutes extraneous prejudicial information and, therefore, the jurors' testimony on the issue falls within Rule 606 (b)'s exceptions.  That is incorrect.

Georgia's Rule 606 (b) is borrowed from Federal Rule of Evidence 606 and, as such, when interpreting its meaning, we are guided by the decisions of federal appeals courts and particularly the Eleventh Circuit.  *Beck,* supra, 305 Ga. at 385-386 (2). The

---

[3] The hearing on Collins's request to subpoena jurors occurred on October 8, 2015.  Therefore, the admissibility of evidence at that hearing is governed by the provisions of the current Evidence Code, which went into effect on January 1, 2013.  See Ga. L. 2011, p. 99, § 101.

Eleventh Circuit has stated that Rule 606 (b) "imposes a nearly categorical bar on juror testimony." (Citation and punctuation omitted.) *United States v. Foster*, 878 F3d 1297, 1309 (III) (D) (11th Cir. 2018). When interpreting Rule 606 (b)'s exception regarding extraneous prejudicial information, the Eleventh Circuit distinguishes between "external" information, which comes from a source outside the jury, and "internal" matters, which include statements made during deliberations. Id. at 1310 (III) (D). All federal appellate courts to have considered whether jurors' discussions regarding a defendant's decision not to testify fall within Rule 606 (b)'s exception for extraneous prejudicial information have consistently held that such discussions do not, by themselves, constitute "external" information about which jurors can testify. See *United States v. Friedland*, 660 F2d 919, 927-928 (3d Cir. 1981) (inquiry into whether jurors had considered and discussed defendant's failure to testify fell "squarely within the prohibition of Rule 606 (b)," because such discussion did not stem from extraneous prejudicial information or an outside influence); *United States v.*

*Martinez-Moncivais*, 14 F3d 1030, 1036-1037 (II) (B) (5th Cir. 1994) (jurors' post-trial statements that an innocent defendant would have testified in his own defense did not fall within the exceptions to the rule prohibiting admission of juror testimony to impeach a verdict); *United States v. Kelley*, 461 F3d 817, 831-832 (II) (D) (6th Cir. 2006) (because defendant's failure to testify was simply "part of the trial" and jurors did not learn of the failure to testify through improper channels, such information does not fall within Rule 606 (b)'s exceptions) (citation and punctuation omitted); *United States v. Tran*, 122 F3d 670, 673 (II) (8th Cir. 1997) (defendant's failure to testify did not constitute extraneous information because jurors learned of it as a result of their presence at trial rather than from events or persons outside the courtroom); *United States v. Rutherford*, 371 F3d 634, 640 (II) (9th Cir. 2004) (where information does not come from outside source, juror testimony about discussion of a defendant's failure to testify during deliberations is inadmissible); *United States v. Voigt*, 877 F2d 1465, 1469 (II) (10th Cir. 1989) (juror statement that defendant was found guilty because

of her failure to testify was not extraneous or outside information, rather was the type of internal deliberation about which Rule 606 (b) prohibits jurors from testifying). Thus, the trial court did not abuse its discretion when it ruled that the juror testimony sought by Collins was inadmissible. In addition, as Collins has not presented any other admissible evidence under Rule 606 (b) that supports her claim of juror misconduct, her claim fails.

3. Next, Collins contends that the trial court abused its discretion by failing to strike Juror 18 for cause.[4] The record shows that during voir dire, Juror 18 was asked if his personal life experiences would affect his ability to be fair and impartial in this case. He responded, "I think [they] might." He was asked if he could judge the evidence in this case and come to a verdict that speaks the truth, and he responded, "Yes." When asked if the fact that the

---

[4] Collins begins this section of her brief by asserting that the trial court erred by not excusing both Juror 18 and Juror 24 for cause. However, other than a bare assertion that Juror 24 "expressed bias," the remainder of this section only contains factual and legal argument regarding Juror 18. As Collins does not provide citation to legal authority or legal analysis regarding Juror 24, her argument regarding that juror is deemed abandoned under Supreme Court Rule 22. See *Henderson v. State*, 304 Ga. 733, 739 (3) (f) (822 SE2d 228) (2018).

defendants had been indicted tilted the scale against them, he responded, "A little bit, yeah." He was also asked if it was fair to say that, due to the existence of the indictment and his "conservative leaning," he was not fair and impartial, and he responded, "That's a fair statement." Juror 18 was then asked if he could follow the instructions from the Court and listen to the evidence and reach a verdict that speaks the truth from what he learned in the courtroom. He responded, "I believe I could — I don't know if I could do a clean slate, but if I listened to the facts — and both sides' arguments, I think I could."

"Whether to strike a juror for cause lies within the sound discretion of the trial judge, and the trial court's exercise of that discretion will not be set aside absent a manifest abuse of discretion." (Citation omitted.) *Poole v. State*, 291 Ga. 848, 851 (3) (734 SE2d 1) (2012).

> For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the

evidence. A prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause. Nor is excusal required when a potential juror expresses reservations about his or her ability to put aside personal experiences. A conclusion on an issue of bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference.

(Citation and punctuation omitted.) *Brockman v. State*, 292 Ga. 707, 721 (9) (739 SE2d 332) (2013). In light of these principles and the record before us, we conclude that, although Juror 18 expressed some initial doubts, the trial court did not abuse its discretion in finding that the juror had not expressed an opinion of guilt or innocence that was so fixed that he would be unable to decide the case based on the evidence presented at trial and the charge of the trial court. See id.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 4, 2020.
Murder. Fulton Superior Court. Before Judge Glanville.
*Derek M. Wright*, for appellant.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine D. Emerson, Assistant Attorney General*, for appellee.