NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: June 22, 2022

S22G0018.  HARRIS v. THE STATE.

COLVIN, Justice.

This case stems from the criminal trial of Shalita Jackson Harris, a school bus driver who was convicted of homicide by vehicle in the first degree after the bus she drove crashed, resulting in the death of a student.  Following her conviction, Harris filed a motion for new trial alleging that jurors had engaged in misconduct during deliberations by researching the available sentences for her charges. The trial court denied the motion, and the Court of Appeals affirmed. See *Harris v. State*, 360 Ga. App. 695, 698-699 (1) (859 SE2d 587) (2021).  We granted certiorari to determine whether "the Court of Appeals err[ed] in concluding that [Harris's] claim of juror misconduct was not sufficiently prejudicial to require a new trial." Because the Court of Appeals and trial court applied the wrong legal

standards, we vacate the judgment and remand for further proceedings consistent with this opinion.

1. By way of background, Harris was indicted for homicide by vehicle in the first degree, reckless driving, two counts of homicide by vehicle in the second degree, speeding, and driving too fast for conditions. After a five-day jury trial, Harris was found guilty of homicide by vehicle in the first degree and reckless driving.[1] Upon learning of a potential juror-misconduct issue, Harris filed a motion for new trial.

The trial court held a hearing on Harris's motion for new trial, during which each of the 12 jurors testified. Two jurors testified that, during deliberations, they had "Googled" the difference between "first and second degree." One of the two jurors testified that she "Googled" the term "[f]irst degree" and knew that some of

---

[1] The jury acquitted Harris of speeding and one count of homicide by vehicle in the second degree. The trial court directed a verdict of acquittal on the remaining counts. The reckless-driving count merged with the homicide-by-vehicle-in-the-first-degree count for sentencing purposes, and the court sentenced Harris to ten years, with the first three years to be served in prison and the remainder to be served on probation.

the charges were more serious than others based on, among other things, the search results. The other juror testified that, during deliberations, she "Googled what the difference between first and second degree was," learned that first degree was a felony and second degree was a misdemeanor, and conveyed that information to the other jurors.[2]

Several other members of the jury testified that they knew or might have known during deliberations that some of the charges were more serious than others in terms of punishment. These jurors said that they either obtained this information from another juror or learned it from the indictment, verdict form, or trial evidence. At least one juror testified that he did not recall knowing during deliberations that some charges were more serious than others.

The trial court denied Harris's motion, concluding that juror misconduct did not warrant a new trial. As an initial matter, the court concluded that the presumption of prejudice, which this Court

_____

[2] Homicide by vehicle in the first degree as alleged in this case is in fact a felony, see OCGA § 40-6-393 (a), and second-degree homicide by vehicle is a misdemeanor, see OCGA §§ 40-6-393 (c), 17-10-3.

3

had previously applied upon a finding of juror misconduct, see, e.g., *Holcomb v. State*, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997), did not survive enactment of the current Evidence Code and was therefore irrelevant in assessing prejudice under OCGA § 24-6-606 (b). Turning to the evidence, the court found that "[t]estimony from each of the jurors confirm[ed] that extrajudicial information was procured by or shared with some jurors, regarding the potential sentence or seriousness of each crime." The court noted, however, that this information was neither evidentiary nor related to the application of the substantive law but rather concerned "the difference in degree or potential sentence of some of the charges." Because the jurors were instructed that sentencing issues were outside the province of the jury and "[t]here is nothing to suggest that this information would affect a jury's decision on guilt or innocence," the court found "no reasonable probability the jury's verdict was influenced by this improper extrajudicial information."

The Court of Appeals affirmed. See *Harris*, 360 Ga. App. at 699 (1). Without addressing whether the trial court had applied the

4

correct legal standard, the Court of Appeals stated:

> When irregular juror conduct is shown, there is a presumption of prejudice to the defendant, and the prosecution carries the burden of establishing beyond a reasonable doubt that no harm occurred. To upset a jury verdict, the misconduct must have been so prejudicial that the verdict is deemed inherently lacking in due process.

Id. at 698 (1) (citation and punctuation omitted). The court acknowledged that, during deliberations, some of the jurors had searched for or learned about "the difference in severity of the charges." Id. But because "the extra-judicial information obtained by some of the jurors in this case had to do with the difference in the severity of the crimes as opposed to the underlying substantive law or evidence," the court concluded that the jurors' actions "were not so prejudicial as to have contributed to the conviction, and were harmless beyond a reasonable doubt." Id. at 698-699 (1) (citation and punctuation omitted). Accordingly, the Court of Appeals concluded that the trial court had not abused its discretion in denying Harris's motion for a new trial on this ground. See id. at 699 (1). We granted certiorari and conclude that we must vacate the

5

Court of Appeals' ruling and remand the case because both the trial court and the Court of Appeals relied upon incorrect legal principles in ruling on Harris's juror-misconduct claim.

2. "To set aside a jury verdict solely because of irregular jury conduct, [a court] must conclude that the conduct was so prejudicial that the verdict is inherently lacking in due process." *Dixon v. State*, 302 Ga. 691, 694 (3) (a) (808 SE2d 696) (2017) (citation and punctuation omitted). We have long held that, in assessing whether juror misconduct meets this standard for prejudice, a court must presume that the misconduct prejudiced the verdict, and the State has a heavy burden to rebut this presumption:

> When irregular juror conduct is shown, there is a presumption of prejudice to the defendant, and the prosecution carries the burden of establishing beyond a reasonable doubt that no harm occurred.

*Burney v. State*, 309 Ga. 273, 293 (5) (845 SE2d 625) (2020) (citation and punctuation omitted); see also, e.g., *Shaw v. State*, 83 Ga. 92, 98 (1) (9 SE 768) (1889) ("[W]here misconduct of a juror or of the jury is shown, the presumption is that the defendant has been injured, and

6

the *onus* is upon the State to remove this presumption by proper proof," that is, by a "show[ing] beyond a reasonable doubt that the defendant was not injured by the misconduct of the . . . jury."). Any "juror misconduct that has the potential to injure a defendant's due process rights" triggers the presumption of prejudice, *Burney*, 309 Ga. at 293-294 (5) (citation and punctuation omitted), and a showing that a single juror engaged in misconduct with the potential to harm the defendant is sufficient to trigger the presumption, see *Lamons v. State*, 255 Ga. 511, 512-513 (340 SE2d 183) (1986). To establish that the juror misconduct was harmless beyond a reasonable doubt, the State must show based on the record evidence that there is no "reasonable possibility that the [juror misconduct] contributed to the conviction," *Bobo v. State*, 254 Ga. 146, 148 (1) (327 SE2d 208) (1985). This will be the case where the State establishes that juror misconduct was "an immaterial irregularity without opportunity for injury." *Sims v. State*, 266 Ga. 417, 419 (3) (467 SE2d 574) (1996).

The trial court failed to apply these principles here, erring in two respects. First, the court erred in concluding that OCGA § 24-

7

6-606 (b) ("Rule 606 (b)") displaced the presumption of prejudice arising from a showing of juror misconduct. That provision of the Evidence Code states:

> *Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify* by affidavit or otherwise nor shall a juror's statements be received in evidence *as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the jury deliberations* or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith; *provided, however, that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the juror's attention*, whether any outside influence was improperly brought to bear upon any juror, or whether there was a mistake in entering the verdict onto the verdict form.

OCGA § 24-6-606 (b) (emphasis supplied). As evident from the plain language of this provision, and as we have previously explained, Rule 606 (b) "governs what is or is not admissible to sustain or impeach a verdict," creating "a nearly categorical bar on juror testimony, with only three specific exceptions." *Beck v. State*, 305 Ga. 383, 385-386 (2) (825 SE2d 184) (2019) (citation and punctuation omitted) (noting that Rule 606 (b)'s specific exceptions permit jurors

8

to testify about whether "(A) extraneous prejudicial information was improperly brought to the jury's attention; (B) an outside influence was improperly brought to bear on any juror; or (C) a mistake was made in entering the verdict on the verdict form" (citation and punctuation omitted)).

Here, Rule 606 (b) permitted the jurors to "testify on the question of whether extraneous prejudicial information was improperly brought to [their] attention" but prohibited them from testifying as to how such information affected their deliberations or the verdict. OCGA § 24-6-606 (b); see also *Beck*, 305 Ga. at 387 (2) ("[I]f the trial court determines that extraneous information was provided to the jury, it will have to evaluate prejudice without the benefit of evidence of internal jury deliberations.").[3] In limiting the evidence on which a court may rely in determining whether juror misconduct warrants a new trial, however, Rule 606 (b) did not

---

[3] The trial court correctly recognized this limitation, instructing counsel that they were limited to asking jurors about "whether extraneous prejudicial information was brought to [their] attention" and that counsel could not ask them "how or if that [information] influenced their verdict."

modify our longstanding substantive legal standards for assessing prejudice. Accordingly, the trial court erred in failing to accord a presumption of prejudice to Harris upon its finding that jurors engaged in improper extrajudicial research with the potential to deprive Harris of due process. See *Burney*, 309 Ga. at 293-294 (5).

Second, although the trial court correctly recognized that it was the State's burden to show that juror misconduct was non-prejudicial, it applied the wrong standard of proof in assessing prejudice. Specifically, the court determined that there was "no reasonable probability" of harm, invoking the standard typically applicable to nonconstitutional errors, rather than applying the "beyond a reasonable doubt" standard that applies to most constitutional errors, including errors arising from juror misconduct. Compare *Burney*, 309 Ga. 293-294 (5) (noting that reversal for juror misconduct is warranted unless the misconduct was harmless "beyond a reasonable doubt"), and *Yancey v. State*, 275 Ga. 550, 557-558 (3) (570 SE2d 269) (2002) ("Whether a constitutional violation constitutes harmless error depends on

10

whether . . . . there is a reasonable possibility that the improperly admitted evidence contributed to the conviction." (citations and punctuation omitted)), with *Henderson v. State*, 310 Ga. 708, 713 (3) (854 SE2d 523) (2021) ("The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." (citation and punctuation omitted)).

The Court of Appeals properly recognized both that a presumption of prejudice attaches upon a finding of juror misconduct and that the State needed to prove beyond a reasonable doubt that the misconduct was non-prejudicial. See *Harris*, 360 Ga. App. at 698 (1). However, that court erred when it concluded as a matter of law that, while extrajudicial information obtained by a juror about "the underlying substantive law or evidence" could prejudice a defendant, extrajudicial information about "the difference in the severity of the crimes" had no potential to cause prejudice. Id. at 698-699 (1) (citation and punctuation omitted).[4]

_____

[4] Unlike the Court of Appeals, the trial court properly considered the "type" of extrajudicial information at issue (e.g., whether the information

11

The Court of Appeals' conclusion that a juror's obtaining extrajudicial sentencing information is always harmless beyond a reasonable doubt conflicts with our decision in *Beck*. There, we vacated the denial of a motion for new trial and remanded for the trial court to consider, in accordance with the evidentiary strictures of Rule 606 (b), the defendant's contention that "he was denied a fair trial because jurors considered extrajudicial information regarding sentencing in reaching a verdict." *Beck*, 305 Ga. at 385-387 (2). Had the Court of Appeals been correct here that only extrajudicial information concerning "the underlying substantive law or evidence" could result in prejudice, *Harris*, 360 Ga. App. at 698-699 (1), there would have been no reason for us to remand the case in *Beck* to consider whether "sentencing information" obtained by

concerned sentencing or the underlying substantive law) as only one factor in determining whether the record as a whole established prejudice. The court also correctly explained that, because Rule 606 (b) prohibits direct inquiry about whether or how the extrajudicial information affected the jury, prejudice must also be assessed by considering such factors as "how [the extrajudicial sentencing information might have been] relevant to the issues decided by the jury," whether the record evidence "suggest[ed] that this [sentencing] information would affect the jury's decision on guilt or innocence," and whether the court had charged the jury that sentencing was an issue outside the province of the jury.

12

jurors warranted a new trial, *Beck*, 305 Ga. at 386-387 (2).

The Court of Appeals' conclusion that jurors' possessing extrajudicial sentencing information can never prejudice a defendant is also inconsistent with half a century of Georgia legislation, case law, and practice prohibiting jurors from considering punishment in reaching a verdict. "In 1970, [when] the General Assembly created a bifurcated trial system for felony criminal cases" that separated the guilt-innocence phase of a trial from sentencing, the legislature provided that jurors were required to "render a verdict of guilty or not guilty 'without any consideration of punishment' before proceeding to sentencing the defendant." *Foster v. State*, 306 Ga. 587, 592 (2) (b) (832 SE2d 346) (2019) (citations omitted). "Four years later, the legislature transferred sentencing responsibility from the jury to the trial court in all felony cases in which the death penalty was not sought." Id.

In accordance with the General Assembly's bifurcation of felony criminal proceedings, Georgia court have taken steps to prevent jurors tasked with rendering a verdict from being tainted

13

with information regarding punishment. We have held that "[i]t is improper for the court to give any instruction to the jury concerning possible sentences in a felony case before the jury has determined the question of guilt or innocence." *Bellamy v. State*, 272 Ga. 157, 159 (4) (527 SE2d 867) (2000) (quoting *Ford v. State*, 232 Ga. 511, 519 (14) (207 SE2d 494) (1974)). We have also made it clear that counsel should not inject sentencing issues into the guilt-innocence phase of a trial. See *Mack v. State*, 306 Ga. 607, 613 (4) (d) (832 SE2d 415) (2019) ("[L]et there be no misunderstanding: if the prosecutor's statements did imply that the punishment for felony murder was less than for malice murder, they would have been plainly inappropriate. . . . We . . . remind the State of its responsibility to avoid such arguments in future cases.").

Further, for nearly 50 years now, Georgia courts have routinely instructed jurors that they "are only concerned with the guilt or innocence of the defendant" and "are not to concern [them]selves with punishment." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 1.70.20 (2022) (citing *Wilson v. State*, 233 Ga. 479,

14

482 (8) (211 SE2d 757) (1975) (approving an instruction that stated "You will not concern yourself with punishment at this time")); see also *Stinski v. State*, 286 Ga. 839, 852 (48) (691 SE2d 854) (2010) (holding that a similar charge "properly directed the jurors to focus their guilt/innocence phase deliberations solely on the question of [the defendant's] possible guilt rather than possibly being distracted by premature concerns regarding sentencing"); *Roberts v. State*, 276 Ga. 258, 260 (4) (577 SE2d 580) (2003) (holding that the pattern "charge is an accurate statement of the law").[5] Moreover, we have

---

[5] There are "limited exception[s] to the general rule proscribing consideration of the consequences of a guilty verdict," which serve to "protect[] the defendant's right to an impartial verdict by correcting any misconceptions jurors may have" so they can decide the issues before them "free from concerns about whether and how the defendant might be punished." *Foster*, 306 Ga. at 593 (2) (b) (discussing OCGA § 17-7-131 (b) (3)); see also *Morrison v. State*, 276 Ga. 829, 833 (3) (583 SE2d 873) (2003) ("Just as this Court has recognized the need to inject limited sentencing issues into jury instructions where the Georgia statute on mental retardation applies, there is also a need to do so in cases that are tried according to the procedures outlined in *Fleming v. Zant*[, 259 Ga. 687 (386 SE2d 339) (1989)]."), overruled on other grounds by *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020); *State v. Patillo*, 262 Ga. 259, 260 (417 SE2d 139) (1992) (noting that, although a "jury is instructed that if it finds the defendant guilty but mentally retarded or mentally ill, the defendant will be given over to the Department of Corrections or the Department of Human Resources," a "jury is not instructed . . . that a verdict of guilty but mentally retarded will preclude a death sentence" because "[s]uch an instruction could divert the jury's attention and inject considerations inappropriate at the guilt phase of the trial" (citation, punctuation, and emphasis omitted)).

clarified that this charge is important enough that a juror's inability "to follow the instruction to deliberate without considering the punishment" provides legal cause for his or her removal. *Johnson v. State*, 288 Ga. 803, 807 (4) (708 SE2d 331) (2011).

As we have explained, the concern with injecting sentencing considerations into the guilt-innocence phase of a trial is that, if the jury can "discern what sentence(s) the defendant on trial is facing," it might "use that knowledge to fashion a verdict that will result in the sentence the jury wishes to see imposed upon the defendant being tried," rather than deciding the defendant's guilt or innocence based on the evidence and underlying substantive law provided by the court. *State v. Vogleson*, 275 Ga. 637, 640-641 (2) (571 SE2d 752) (2002). Although we do not hold that a juror's obtaining extrajudicial sentencing information is *always* prejudicial, the Court of Appeals erred in concluding that such information could *never* be "so inherently prejudicial as to require a new trial." *Harris*, 360 Ga. App. at 698-699 (1) (citation and punctuation omitted).

Accordingly, we vacate the opinion of the Court of Appeals and

16

direct the court to remand the case to the trial court to determine in the first instance whether, applying the principles of law set out above, Harris's motion for a new trial based on juror misconduct should be granted.

*Judgment vacated and case remanded with direction. All the Justices concur.*